Terry KINYON, Personal Representative of the Estate of Loyd Wayne Kinyon, Appellant,

v.

Max KINYON d/b/a K–Bar Company, Appellees,

and Oklahoma Farm Bureau Mutual Insurance Company, an Oklahoma Corporation, Defendant.

No. 74312.

Court of Appeals of Oklahoma, Division No. 3.

Sept. 10, 1991.

Rehearing Denied Nov. 5, 1991.

Certiorari Denied March 17, 1992.

Kenneth W. Klingenberg, Oklahoma City, for appellant.

Jeffrey A. King, Tulsa, for appellee.

## OPINION

HUNTER, Chief Judge:

This is an appeal by Terry Kinyon, the personal representative of Wayne Kinyon, plaintiff below, from an adverse jury verdict in a wrongful death case. Defendants below were Max Kinyon, and K–Bar Company. The issues involving the remaining defendant, Farm Bureau, were bifurcated. Farm Bureau was, therefore, not a party to the issues tried below, nor is it a party to this appeal.

## ISSUE

The sole issue in this case is whether the trial court committed reversible error in admitting certain impeachment testimony. We find that the trial court did not err in its rulings on this issue.

## FACTS

Wayne Kinyon was a principal in K–Bar as was his father, Max Kinyon. Wayne Kinyon's personal representative, Terry Kinyon, was Wayne Kinyon's brother. K–Bar was a partnership engaged in a cattle buying operation. The accident at issue here happened on February 22, 1988. Wayne Kinyon was using a 1973 model 2 ton feed truck owned by K–Bar. A feed bin and chute were mounted on the truck. Wayne Kinyon was driving through an alley between two feed lots loading feed into the feed troughs. Wayne Kinyon stopped and got out of the truck. The truck rolled forward and crushed him against one of the alley gates. Despite his critical injuries, Wayne Kinyon was able to get to his father's house, which was near the feed lots.

Wayne Kinyon lived for 18 days. He was visited by family members virtually every day.

There were no witnesses to the accident. The parties agree that K–Bar had owned the feed truck for nearly three years. They agree that the truck's emergency brake had never worked. The parties also agree that Wayne Kinyon used the truck about 80% of the time. They differ over whether Wayne Kinyon knew the emergency brake didn't work. Terry Kinyon claimed that Wayne Kinyon might not have known. K–Bar claimed that Wayne Kinyon had to know because of his heavy use of and intimate familiarity with the truck.

Terry Kinyon's theory of the case was that Wayne Kinyon saw a calf trapped in one of the feed troughs, stopped the truck, set the emergency brake, and got out to rescue the calf. The emergency brake did not hold and the truck rolled forward and struck Wayne Kinyon in the back.

K–Bar denied a trapped calf played any part in the accident. K–Bar says that Wayne Kinyon knew the emergency brake didn't work. Wayne Kinyon stopped the truck to open a gate. He simply took a chance by stopping on a slope without killing the engine and putting the truck in gear. He did not kill the engine because the battery was unreliable. Wayne Kinyon then turned back toward the truck, saw it rolling, and tried to get back into the cab. The feed chute on the driver's side of the truck then hit him and pinned him against the gate.

In their depositions, taken several months before the trial, neither Max Kinyon nor Terry Kinyon suggested that a trapped calf was the cause of Wayne Kinyon getting out of the truck. K–Bar's counsel elicited the line of testimony Terry Kinyon complains of from Terry Kinyon himself. Terry Kinyon testified in his deposition that he believed the truck struck his brother as he was trying to get back into the cab. Terry Kinyon testified he based this opinion on conversations he had with Wayne Kinyon after the accident, before Wayne Kinyon died. Terry Kinyon's counsel objected when K–Bar impeached Terry Kinyon with his deposition testimony. Rel-

evant portions of Terry Kinyon's deposition testimony are set out in footnote 1:[1]

Wayne Kinyon's father, Max Kinyon also testified at trial that at the time K–Bar took his deposition, he believed Wayne Kinyon turned and headed back toward the truck before the truck hit him.

Terry Kinyon complains that the admission of his deposition testimony so prejudiced him, we should order a new trial. Terry Kinyon contends that the testimony was speculative opinion, and therefore not admissible under 12 O.S.1981 § 2701. Terry Kinyon misconceives the nature of that testimony. His deposition testimony was admissible because it was inconsistent with his trial testimony. That testimony went to Terry Kinyon's credibility.

Terry Kinyon could not avoid being impeached on his earlier theory of what caused the accident simply by characterizing it as speculative. The fact remains that Terry Kinyon talked with his brother about the accident. The jury was entitled to know that Terry Kinyon's trial testimony about what caused the accident was contrary to his deposition testimony.

Terry Kinyon theorized at trial that a calf stuck in a feed trough precipitated the accident, and that Wayne Kinyon didn't see the truck before it hit him. Once Terry Kinyon did this, K–Bar had a right to impeach them. K–Bar properly showed that Terry Kinyon testified in his deposition that he thought the accident happened because Wayne Kinyon tried to get back into the truck while it was rolling.

That a prior inconsistent statement was an opinion does not make it inadmissible. E. Cleary, et al, *McCormack on Evidence*, Second edition, 69–70 (1972) states:

> ... What was once supposed to be a difference between fact and opinion is now regarded as a difference in degree only ... The trend of holdings and the majority view is in accord with the commonsense notion that if a substantial inconsistency appears the form of the impeaching statement [including an opinion] is immaterial.

*McCormack* urges courts to liberally receive impeachment evidence "in case of doubt, to aid in evaluating the testimony." *McCormack*, 69.

Terry Kinyon cites no cases holding the admission of impeaching testimony was error. We have found no Oklahoma cases dealing with this factual issue. However, *Judson v. Fielding*, 227 App.Div. 430, 237 N.Y.S. 348 (1929) bears striking similarity to this case. In *Judson*, plaintiff's witness testified to facts at trial that cast blame on the driver of defendant's bus. The court held it was appropriate to impeach the witness with an earlier statement, "The bus was not to blame."

Whether a witness is qualified to express an opinion is a preliminary determination for the trial court. That determination is within the discretion of the trial court, and it must be upheld unless clearly erroneous.

---

**1.** The ellipsis in this examination represent repetitious testimony and discussions between the trial court and counsel, which have been excised for clarity.

Q  Okay, page 54 line 25:
  "Q  Well, was it your understanding in talking to Wayne though, that he had stopped the truck and that he had gone down to open up the gate?
  A  Yes.
  Q  And he was coming back around when he got hit by the chute and pinned against the gate?
  A  Right."
Is that a correct statement?
A  That's correct.
          *     *     *     *     *     *
Q  Okay, let me refer you to page 47, lines 8 through 18.

"Q  Okay.  Have you talked to your father at all about how this accident happened?
  A  Yeah, we speculated about it, but you know, we have no....
  Q  Just tell me what your speculation is?
  A  I think he went in there and fed the first pen and he got out of the truck and went down there to open the second gate, and I think he probably went down there and the truck was rolling behind him and when he tried to get back in the chutes were there and pinned him, it was right, it was right beside the door."
Is that correct or incorrect, that statement?
A  That's my speculation, Mr. King, but I wasn't there and ...

*Ferguson v. State*, 675 P.2d 1023 (Okl.Cr. 1984); *Randolph v. Collectramatic, Inc.*, 590 F.2d 844 (10th Cir.1979). The trial court acted within its discretion when it allowed K–Bar to impeach Terry Kinyon on the inconsistent opinions expressed in his deposition.

The judgment appealed from is AF-FIRMED.

HANSEN, P.J., and JONES, J., concur.