**AETNA CASUALTY & SURETY COMPANY**

v.

**MANUFACTURERS CASUALTY INSURANCE COMPANY and J. V. Lear.**

Civ. A. No. 4867.

United States District Court
W. D. Louisiana, Shreveport Division.

May 9, 1956.

Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, La., for plaintiff.

Jackson, Smith, Mayer & Kennedy, Shreveport, La., for defendants.

BENJAMIN C. DAWKINS, Jr., Chief Judge.

This action having been heard at a trial on the merits, before the Court without a jury, the Court having considered the pleadings, the stipulation of counsel, the evidence, the arguments and briefs of counsel, makes the following

### Findings of Fact.

1.

Plaintiff, a corporate citizen of Connecticut, here is seeking to recover damages in excess of $3,000 from defendants, as the result of an accident which occurred within the Shreveport Division of this Court's jurisdiction. Defendants are J. V. Lear, a citizen of Louisiana, and Manufacturers Casualty Insurance Company, a corporate citizen of Pennsylvania. There is complete diversity of citizenship, therefore, between plaintiff and defendants.

2.

Defendant, J. V. Lear, was and is engaged in the general building, contracting and construction business. Prior to February 3, 1954, he entered into a contract with the Police Jury of Claiborne Parish, Louisiana, to erect for it an office building at Homer, Louisiana. Defendant, Manufacturers Casualty Insurance Company, on February 3, 1954, was the public liability and workmen's compensation insurer of J. V. Lear.

3.

Construction Machinery Corporation, of Shreveport, was engaged in selling, servicing and renting construction machinery. S. C. Jackins is a Vice-President of that company and E. L. Kinkennon was in charge of its service department. On February 3, 1954, plaintiff was the workmen's compensation insurer of Construction Machinery Corporation.

4.

In connection with the construction contract described, Lear found it necessary to use a mechanical hoist. He contacted Construction Machinery Corporation and rented such a hoist from it. Under the arrangement between them, he was to pick up the hoist, transport it to the construction site, use it there, and return it to Shreveport. He was to pay a fixed monthly rental for it while having it in his possession. Lear picked up the hoist, took it to the construction job at Homer, Louisiana, erected it and used it in constructing the building. When his work was complete, or nearly so, he found that he was unable to dismantle the hoist. He then contacted Jackins by telephone, and arranged for Construction Machinery Corporation to send one of its men, who knew how to handle such things, to Homer to dismantle the hoist. Lear was to pay $15 per day, plus automobile mileage expense, for this service.

5.

On February 3, 1954, Construction Machinery Corporation sent Kinkennon

to perform the job. Upon his arrival, he inspected the situation; and, realizing that it was out of the ordinary, he conferred with Jackins by telephone concerning his problem and was instructed to go forward with the dismantling work according to his own best judgment. Kinkennon remained subject to the direction and control of Construction Machinery Corporation at all times involved. He never was subject to Lear's direction or control.

**6.**

Before beginning the work, Kinkennon advised Lear he needed physical help to do the job and Lear assigned two of his employees to assist him. These men were placed under Kinkennon's immediate control and direction and he instructed them as to what to do and how to do it.

**7.**

While the dismantling work was in progress, Kinkennon suffered injuries, which plaintiff contends resulted from negligence on the part of the two men who had been loaned to Kinkennon by Lear.

**8.**

As the result of the accidental injuries suffered by Kinkennon, plaintiff, as the compensation insurer of Construction Machinery Corporation, paid considerable hospital and medical expenses and workmen's compensation benefits. It sues here to recover from defendants the amounts it has paid to Kinkennon, or for his benefit, totaling $5,536.73, for $1,500 in attorney's fees, and to have it held that defendants are liable for all future expenses or workmen's compensation payments which may be due as the result of the accident.

**Conclusions of Law.**

**1.**

Since there is complete diversity of citizenship between plaintiff and defendants, the amount in controversy exceeds $3,000, and the accident out of which the suit arises occurred within the Western District of Louisiana, this Court has jurisdiction. 28 U.S.C. § 1332.

**2.**

The work of dismantling the hoist was a necessary and integral part of the business of the general contractor, J. V. Lear. Thibodeaux v. Sun Oil Company, 218 La. 453, 49 So.2d 852.

**3.**

Construction Machinery Corporation, on the occasion in question, was a subcontractor engaged in performing a necessary and integral part of the general contractor's work. Since, at all times involved, Kinkennon was an employee of Construction Machinery Corporation, remaining subject to its direction and control, he was not a "loaned" employee, or employee pro hac vice, of Lear. Dixie Machine Welding & Metal Works, Inc., v. Boulet Transportation Company, La.App., 38 So.2d 546, 552.

**4.**

The only liability which Lear had to Kinkennon was as a principal contractor to an employee of a subcontractor, under the Louisiana Workmen's Compensation Statute, LSA–R.S. 23:-1021 et seq. This was a remote and secondary liability, the subcontractor and its compensation insurer being primarily liable. Therefore, Lear and his insurer are not liable to plaintiff for indemnity. Coal Operators Casualty Company v. Fidelity & Casualty Company of New York, 223 La. 794, 66 So.2d 852.

**5.**

The two men loaned by Lear to Kinkennon were employees pro hac vice of Construction Machinery Corporation, acting under Kinkennon's direct orders. Consequently, their negligence, if any, is attributable to him, as well as to Construction Machinery Corporation and to plaintiff, thus barring recovery. Dixie Machine Welding & Metal Works, Inc., v. Boulet Transportation Company, supra; B & G Crane Service v. Thomas W. Hooley & Sons, 227 La. 677, 80 So. 2d 369.

**6.**

Lear was not a subcontractor for Construction Machinery Corporation, as plaintiff contends, because he did not undertake to do any work for that company. Indeed, it was the company which contracted to do the work for him through Kinkennon. All he did was to lend two of his men to Kinkennon. Consequently, Benoit v. Hunt Tool Company, 219 La. 380, 53 So.2d 137, relied on by plaintiff, is not applicable. If Kinkennon had negligently injured one of Lear's men, then that case would govern, and Construction Machinery Corporation and its liability insurer would have been liable in tort to the injured party; and Lear, or his compensation insurer could have recovered indemnity from them.

**7.**

Defendants are entitled to judgment rejecting plaintiff's demands at its cost.

Proper decree should be presented for signature.